UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTOPHER M. MOORE,

                 Plaintiff,

vs.

TOWN OF WEBSTER, NEW YORK;
DANIEL P. GITSIS; KOHL'S INC.,
KOHL'S DEPARTMENT & CLOTHING
STORE LOCATION 772;
KOHL'S NEW YORK, D.C., INC.;
and ALEXANDER M. MOSKAL,

                 Defendants.

_____

DECISION AND ORDER

24-CV-6062-MAV

Plaintiff Christopher M. Moore was arrested by the Webster Police Department in February 2022 on charges that were later dismissed on the basis of his being "wrongfully charged." ECF No. 1-5 at 4. He now brings this action against two sets of defendants. In his first and second causes of action, Moore claims that Defendants the Town of Webster, New York and Officer Daniel P. Gitsis[1] of the Webster Police Department (collectively, the "Webster Defendants") are liable under 42 U.S.C. § 1983 for malicious prosecution in violation of his Fourth and Fourteenth Amendment rights. ECF No. 1 at ¶¶ 103–26. In his third cause of action, Moore claims that Kohl's Inc., Kohl's Department & Clothing Store Location 772, Kohl's New York, D.C., Inc., and Kohl's loss prevention supervisor Alexander M. Moskal (collectively, the "Kohl's Defendants") are liable for negligence. ECF No. 1 at ¶¶ 127–33.

_____

[1] Moore's Complaint does not specify either in the caption or the body of the complaint whether his claims are against Officer Gitsis in his official capacity, his individual capacity, or both. ECF No. 1.

The matter is presently before the Court on the Webster Defendants' motion to dismiss the first and second causes of action in Moore's complaint for failure to state a claim upon which relief may be granted, and in any event to dismiss the claims against Officer Gitsis in his official capacity as redundant of claims against the Town. ECF No. 9. For the reasons discussed below, the Webster Defendants' motion [ECF No. 9] is granted with respect to the claims against Officer Gitsis in his official capacity and Moore's Fourteenth Amendment malicious prosecution claim, but denied with respect to Moore's Fourth Amendment malicious prosecution claim. Further, the Town of Webster is dismissed as a defendant in this action.

## LEGAL STANDARD

At the outset, the Court notes that the purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "is to test . . . the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis omitted). An action must be dismissed under Rule 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). To survive a motion to dismiss under Rule 12(b)(6), on the other hand, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

2

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where a plaintiff's factual allegations are "merely consistent with" a defendant's liability, those allegations "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557). Moreover, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (citation and internal quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## BACKGROUND

The following facts are taken from Moore's pleadings, which the Court accepts as true for the purpose of ruling on the motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted).

Shortly after 9 AM on the morning of December 11, 2021, security cameras at the Kohl's in Webster, New York captured footage of two unknown white males stealing five vacuum cleaners from the store. ECF No. 1 at ¶ 20. After reviewing the footage, Moskal – the store's loss prevention supervisor – filed a report with the Webster Police Department ("WPD") on December 17, 2021. *Id.* at ¶ 24. Although Moskal included four color photos of the suspects extracted from the footage, the

3

WPD's "field case report" drafted by Officer Gitsis described the suspects' ages as between 1 and 98, and did not record height, weight, hair color, eye color, or other descriptors. *Id.* at ¶ 23–24. WPD closed the case a couple of weeks later due to "lack of solvability factors." *Id.* at ¶ 25.

Then, on January 12, 2022, while Moskal was on duty at the Kohl's Batavia location, he observed two suspects – one of whom he recognized from the Webster theft – enter the Batavia store and act suspiciously. *Id.* at ¶ 26. Moskal immediately notified the Genesee County Sheriff's Office of a possible larceny in progress, and Investigator Ryan M. DeLong was the responding officer. *Id.* Investigator DeLong encountered and detained one of the suspects in the parking lot, and the suspect admitted he had stolen from other Rochester area stores a couple of months before. *Id.* at ¶ 29. The suspect identified himself to Investigator DeLong as Christopher M. Moore, and provided Moore's actual birth date and phone number. *Id.* at ¶ 30. Investigator DeLong captured an image of the suspect on his body cam, but he did not arrest the suspect and there is no indication he otherwise sought to verify the suspect's identity. *Id.* at ¶¶ 32–33.

On January 13, 2022, Moskal contacted Officer Gitsis of the WPD to report that the identity of the larceny suspect from the Webster Kohl's in December was Christopher M. Moore. *Id.* at ¶ 36–37. Based on Investigator DeLong's identification of the Batavia Kohl's suspect as Christopher M. Moore, and Moskal's recognition of the suspect from the Webster larceny, Moskal signed on January 20, 2022, a sworn

statement of fact affirmed under penalty of perjury, which concluded, "I want Christopher M. Moore . . . charged and prosecuted to the fullest extent of the law for stealing property from [the Webster] Kohl's on 12/11/2021." *Id.* at ¶ 38–39. On January 22, 2022, Officer Gitsis spoke with Investigator DeLong via phone "about the incident that took place at the Kohl's Batavia location . . . . [and] Investigator DeLong advised how he was able to determine the suspect[']s identity . . . ." ECF No. 1-2 at 3. On January 27, 2022 Officer Gitsis received a sworn deposition from Investigator DeLong, also affirmed under penalty of perjury, as well as the image of the suspect captured by Investigator DeLong's body cam. *Id.*

Based on Moskal's sworn statement and the sworn deposition provided by Investigator DeLong, Officer Gitsis filed a criminal complaint accusing Moore of a class E felony, Grand Larceny in the Fourth Degree, and requested a warrant from Webster Town Justice Thomas DiSalvo for Moore's arrest. ECF No. 1 at ¶¶ 43–44, 47. Officer Gitsis' "field case supplement report" listed Moore's address and his date of birth, and identified his race as white, his eye color as brown, and his height as 5'6". ECF No. 1-2 at 2. The report did not include Moore's weight or hair color, or identify any distinguishing scars, marks, or tattoos. *Id.* Judge DiSalvo signed the warrant on or about January 31, 2022, authorizing Moore's arrest and the issuance of an appearance ticket. ECF No. 1 at ¶ 47; ECF No. 1-2 at 15.

Moore, a middle school science teacher in the Pittsford Central School District who claims he "had never run afoul of the law in his life," was arrested on February

25, 2022, despite "vigorously" protesting his innocence. *Id.* at ¶¶ 52, 55, 57. There is no indication in either the Complaint or its exhibits that Officer Gitsis was present at the arrest, or at Moore's subsequent "booking" at the Webster police station. Regardless, when Moore was booked at the station, the arresting officers did not check Moore's physical appearance against the images from the Kohl's Webster footage from December 2021, or the image captured by Investigator DeLong's body cam in January 2022. *Id.* at ¶ 63.

Moore was issued an appearance ticket and released that same evening with instruction to appear before the Webster Town Court on March 9, 2022. ECF No. 1-2 at 17. Soon thereafter, the New York State Education Department's Office of School Personnel Review and Accountability was notified of Moore's arrest. *Id.* at ¶ 70. When Moore notified the school district, he was placed on administrative leave, pending the outcome of his case. *Id.* at ¶¶ 70–73.

Moore's defense counsel obtained discovery in March and April 2022, and quickly realized that the footage and photos of the Kohl's Webster and Kohl's Batavia suspect were not Moore. *Id.* at ¶¶ 77–79. After correspondence with Moore's counsel, the Monroe County District Attorney's Office joined Moore in requesting that all charges against him be dismissed on the merits, which they were on May 4, 2022. *Id.* at ¶ 80.

Authorities eventually learned that the suspect's real name was Christopher Cole, an individual who attended high school with Moore. *Id.* at ¶ 93. Cole had used

Moore's identity in several other jurisdictions, as well, eliciting a felony complaint against Moore from Ontario County, New York, accusations of larceny against Moore from the Greece Ridge Shopping Mall, and a warrant for Moore's arrest from Cayuga County. ECF Nos. 1 at ¶¶ 83–96, 1-5, 1-6. Like the Town of Webster, Ontario County dismissed its case against Moore after determining that Cole was the real suspect. ECF No. 1 at ¶¶ 93–94.

Moore filed this action in January 2024, claiming malicious prosecution against the Webster Defendants, and negligence against the Kohl's Defendants. ECF No. 1. Moore attached six exhibits to his complaint with a supporting declaration by counsel: (1) the WPD December 2021 "field case report", including images of the Kohl's Webster larceny suspects (ECF No. 1-1); (2) the WPD's January 2022 "field case supplement report" (ECF No. 1-2); (3) a letter from the State Education Department informing Moore that the Pittsford Central School District had been notified of his arrest (ECF No. 1-3); (4) Moore's counsel's post-arrest FOIL request (ECF No. 1-4); (5) email exchanges between Moore's counsel and the Monroe County District Attorney's office securing dismissal of the charges (ECF No. 1-5); (6) post-arrest communications from JCPenney accusing Moore of shoplifting and a consequent felony complaint from Ontario County (ECF No. 1-6). Under Rule 10(c) of the Federal Rules of Civil Procedure, these six exhibits are considered "a part of the pleading for all purposes." *See also Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) ("It is well established that a pleading is deemed to include any 'written

instrument' that is attached to it as 'an exhibit' . . . .").

The Webster Defendants filed a motion to dismiss for failure to state a claim in March 2024. ECF No. 9. That motion is presently before the Court.

## DISCUSSION

The Webster Defendants maintain that any claims against Officer Gitsis in his official capacity should be dismissed as redundant of his claims against the Town of Webster. Perhaps more significantly, the Webster Defendants further argue that Moore's first and second causes of action fail to state claims for malicious prosecution against Officer Gitsis or the Town of Webster because the pleadings do not establish either the absence of probable cause for Moore's arrest or the existence of actual malice.

## I. Claims Against the Town and Officer Gitsis in His Official Capacity

The Webster Defendants argue that claims against Officer Gitsis in his official capacity are redundant and should be dismissed. ECF No. 9-1 at 5. The Court agrees, and finds that the Town of Webster should be dismissed as a defendant, too.

As the Second Circuit has stated, "[a] claim asserted against an individual in his official capacity . . . is in effect a claim against the governmental entity itself, rather than a suit against the individual personally . . . ." *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012). Because the Town of Webster is also named as a defendant in the instant case, any claims against Officer Gitsis in his official capacity are redundant. *Doyle v. City of Corning*, No. 14-CV-6507-CJS-MWP, 2019 WL

360759, at *4 (W.D.N.Y. Jan. 29, 2019).

Further, even more significant than the issue of the claims against Officer Gitsis in his official capacity are the shortcomings in Moore's allegations against the Town of Webster. "A municipality may not be held liable under § 1983 solely on the basis of *respondeat superior*." *McGee v. Doe*, 568 F. App'x 32, 41 (2d Cir. 2014), *as amended* (July 2, 2014). Rather, "to establish municipal liability, 'a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy.'" *Id.* (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)).

Here, Moore claims that the Town of Webster is liable for malicious prosecution, but he fails to allege any basis for such finding. He does not plausibly allege the existence of any Town "custom or policy" that caused Officer Gitsis' conduct or Moore's arrest; he does not allege any deficiencies in Officer Gitsis' training or supervision; he does not allege deliberate indifference by the Town to people's Fourth Amendment rights; and he does not allege any facts connecting any Town officials with final policymaking authority to the decision to arrest him. *See, e.g., Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (holding that a plaintiff can establish that his constitutional right was violated because of a single decision by a municipal official who is "responsible for establishing final policy with respect to the subject matter in question.").

In sum, because Moore's claims against Officer Gitsis in his official capacity are redundant with his claims against the Town of Webster, and because Moore failed

to allege a sufficient basis for finding that the Town may be held liable under § 1983 (i.e., that the violation of his constitutional rights resulted from a municipal custom or policy), Moore's claims against both Officer Gitsis in his official capacity and the Town of Webster must be dismissed.

## II. Moore's Malicious Prosecution Claims under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "(1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (internal citations and quotation marks omitted). Further, in order to establish liability under § 1983 against a municipality, "a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy." *DeCarlo*, 141 F.3d at 61 (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991)).

Moore's first and second causes of action allege that the Webster Defendants are liable under § 1983 for violating his Fourth Amendment and Fourteenth Amendment rights by subjecting him to a malicious prosecution. ECF No. 1 at ¶ 103–26.

### A. Malicious Prosecution in Violation of the Fourth Amendment

A plaintiff can prevail on a § 1983 claim against a state actor for malicious prosecution if he can establish both a violation of his rights under the Fourth Amendment, and the elements of a malicious prosecution claim under state law. *See,*

10

*e.g., Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010).

The Fourth Amendment protects individuals against "unreasonable searches and seizures" by, among other things, "prohibiting government officials from detaining a person in the absence of probable cause." As the Supreme Court has acknowledged, a plaintiff can demonstrate a Fourth Amendment violation not only by showing the police held him "without any reason before the formal onset of a criminal proceeding," but also by showing that the legal process itself was wrong – "when, for example, a judge's probable cause determination is predicated solely on a police officer's false statements." *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 366–67 (2017). Even if a plaintiff was released pretrial, he can still demonstrate he was "seized" in the constitutionally-relevant sense: "Such a defendant is scarcely at liberty; he remains apprehended, arrested in his movements, indeed 'seized' for trial, so long as he is bound to appear in court and answer the state's charges." *Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir. 1997) (internal quotation marks and citation omitted).

The New York common law "tort of malicious prosecution protects the personal interest of freedom from unjustifiable litigation . . . . [t]he essence of malicious prosecution is the perversion of proper legal procedures." *Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975) (internal citations omitted). To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the commencement or continuation of a criminal proceeding against plaintiff; (2) termination of the

proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions. *Id.*

### B. Moore's Fourth Amendment Malicious Prosecution Claim

With respect to Moore's malicious prosecution claim against Officer Gitsis in his individual capacity, it is undisputed that Moore was "seized" for Fourth Amendment purposes, and that the first two elements of a malicious prosecution claim are met: a criminal proceeding was instituted against Moore, and that proceeding terminated in his favor. *See* ECF Nos. 1-2 at 8 (the felony complaint), 1-5 at 4 (Judge DiSalvo's order of dismissal on the basis of Moore being "wrongfully charged"). After careful review of Moore's pleadings and the parties' motion papers, the Court concludes that Moore has also plausibly alleged both the absence of probable cause and actual malice sufficient to survive the motion to dismiss.

First, the Webster Defendants' reliance on the proposition that "[w]here an officer makes an arrest pursuant to a warrant it is presumed to be reasonable and have been issued on probable cause" is misplaced. ECF No. 9-1 at 7–10 (discussing *Bah v. Apple Inc.*, 2021 WL 4084500, at *9 (S.D.N.Y. 2021)). While the general principle is certainly true, under New York law "[t]hat rule is inapplicable [ ] where the warrant is issued by a judge on the basis of the sworn accusations of the defendant in the malicious prosecution action." *Pritzker v. City of Hudson*, 26 F. Supp. 2d 433, 442 (N.D.N.Y. 1998) (quoting *Russo v. State of New York*, 672 F.2d 1014, 1018 (2d Cir. 1982), *modified on other grounds*, 721 F.2d 410 (1983)). Here, Judge DiSalvo's

warrant was based on the sworn felony complaint and supporting field reports prepared and submitted by defendant Officer Gitsis. ECF No. 1-2 at 8. Therefore, a presumption of probable cause would not be appropriate here.

Second, the Webster Defendants point to several cases for the proposition that "probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). *See* ECF No. 9-1 at 7–12 (discussing also *Wright v. Orleans Cnty.*, 2015 WL 5316410 (W.D.N.Y. 2015); *Williams v. Carpenter*, 214 F. Supp. 3d 197, 201 (W.D.N.Y. 2016)). As with the proposition asserted above in *Bah*, the Court does not disagree with the general proposition that the Webster Defendants are asserting with regard to mistaken information. *See, e.g., Hill v. California*, 401 U.S. 797, 803 (1971) ("But aliases and false identifications are not uncommon."). Nevertheless, because Moore has plausibly alleged the absence of probable cause, his allegations are sufficient to defeat a motion to dismiss.

"The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases . . . . [it requires] such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013) (citing *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)). Probable cause is typically assessed in light of the facts known or reasonably believed by the defendants at the initiation of the

13

prosecution. *Keyes v. City of New York*, No. 21-2406-CV, 2023 WL 176956, at *4 (2d Cir. Jan. 13, 2023). This is a mixed question of law and fact. *See United States v. Singletary*, 798 F.3d 55, 59 (2d Cir. 2015). Questions of historical fact regarding the defendant's knowledge at the time of arrest or the commencement of a prosecution are to be resolved by the jury. *Dufort v. City of New York*, 874 F.3d 338, 348 (2d Cir. 2017) (citing *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)). On the other hand, "where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007).

Moore's pleadings identify circumstances from which a jury might infer it was unreasonable for Officer Gitsis to believe that Moore was guilty. For instance, Moore alleges that Officer Gitsis based his felony complaint and warrant request on only two sources of information, both of whom based their identification of Moore on a single statement by an individual detained in the parking lot of a Kohl's in which he was suspected of attempting to commit a larceny. ECF No. 1 at ¶¶ 43–44, 46–48. Officer Gitsis' "field case supplement report" indicates he spoke with Investigator DeLong regarding "how he was able to determine the suspect[']s identity," (ECF No. 1-2 at 3), but the substance of that conversation is not known. Consequently, it appears – as Moore alleges – that Officer Gitsis was left only with "the unverified verbal identification of an admitted felon." ECF No. 1 at ¶ 44. Depending on the substance of his conversation with Investigator DeLong, and any further

investigation he may have conducted in the preparation of his felony complaint, a jury could potentially find that this was an unreasonable basis upon which to believe Moore guilty.

Similarly, the Court declines to adopt the Webster Defendants' positition that Moore has failed to plausibly allege actual malice. "Under New York law, malice does not have to be actual spite or hatred[ ] but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) *as amended* (May 21, 1996) (quoting *Nardelli v. Stamberg*, 377 N.E.2d 975, 976 (1978)). A plaintiff need not demonstrate the defendant's intent to do him personal harm, "but need only show a reckless or grossly negligent disregard for his or her rights." *Charlotten v. Heid*, No. 1:09-CV-0891 LEK/RFT, 2011 WL 3423826, at *7 (N.D.N.Y. Aug. 4, 2011) (quoting *Putnam v. County of Steuben*, 61 A.D.3d 1369, 1370–71 (N.Y. App. Div. 2009)). Thus, "[i]n most cases, the lack of probable cause – while not dispositive – 'tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.'" *Lowth*, 82 F.3d at 573 (quoting *Conkey v. State*, 74 A.D.2d 998, 999 (4th Dep't 1980)) (emphasis added). *See also Johnson v. City of Rochester*, No. 21-CV-6683DGL, 2023 WL 8237560, at *8 (W.D.N.Y. Nov. 28, 2023).

Because the Court finds that Moore has adequately pled an absence of probable cause, the Court declines to find as a matter of law at this stage of the proceedings

15

that Officer Gitsis lacked actual malice. *Sanders v. City of Saratoga Springs*, 691 F. Supp. 3d 548, 559 (N.D.N.Y. 2023) (declining to find an absence of malice where the plaintiff had plausibly alleged that defendants lacked probable cause). While further discovery may show that Officer Gitsis engaged in what is "no more than poor police work" that is not actionable under § 1983 (ECF No. 9-1 at 12, quoting *Williams*, 214 F. Supp. 3d at 201), such a finding is not appropriate where Moore's pleadings sufficiently allege facts from which a jury could infer that belief in his guilt was unreasonable. *Varricchio v. Cnty. of Nassau*, 702 F. Supp. 2d 40, 53 (E.D.N.Y. 2010) (denying a motion to dismiss plaintiff's § 1983 malicious prosecution claim because "the existence of probable cause remain[ed] in question, [and thus] the existence of actual malice [did] as well").

Accordingly, Moore's first cause of action may proceed.

### C. Moore's Fourteenth Amendment Malicious Prosecution Claim

By contrast, Moore's second cause of action must be dismissed because the Fourteenth Amendment itself is not a sufficient Constitutional ground for a malicious prosecution claim.

The Supreme Court has stated that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process [under the Fourteenth Amendment]." *United States v. Lanier*, 520 U.S. 259, 272 n.7, (1997) (citations omitted). Indeed, after

16

considering Supreme Court precedent, the Second Circuit determined more than thirty years ago that "the Fourteenth Amendment right to substantive due process will not support a federal claim for malicious prosecution." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 114 (2d Cir. 1995) (discussing *Albright v. Oliver*, 510 U.S. 266 (1994)). Rather, "[i]f the complaint is that a form of legal process result[ed] in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment." *Manuel*, 580 U.S. at 367.

Although neither party addresses this issue in their papers, the Court finds sufficient consistency in the application of the Second Circuit's holding over time to warrant dismissal of Plaintiff's second cause of action on this basis. *See, e.g., Macdonough v. Spaman*, No. 615CV0643LEKTWD, 2016 WL 1298134, at *5 (N.D.N.Y. Mar. 31, 2016) (rejecting the plaintiff's attempt to ground his malicious prosecution claim in the Fourteenth Amendment) (citing *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013); *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010); *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)). *See also Towner v. Town of Cohocton*, No. 19-CV-6638 CJS, 2021 WL 1966799, at *9 (W.D.N.Y. May 17, 2021) ("[I]t appears that the false arrest and malicious prosecution claims are properly raised under the Fourth Amendment, not the Fourteenth Amendment's Due Process clause.").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [ECF No. 9] is

17

granted in part and denied in part. Specifically, it is hereby,

ORDERED that Moore's claims against Officer Gitsis in his official capacity and the Town of Webster be dismissed, and the Clerk of Court is directed to update the docket to reflect the claims are against Officer Gitsis only in his individual capacity; and it is further

ORDERED that Moore's second cause of action, malicious prosecution in violation of Moore's Fourteenth Amendment rights, be dismissed; and it is further

ORDERED that the Webster Defendants answer Moore's remaining claims, as well as the Kohl's Defendants' cross-claim, within thirty (30) days from the date of this order.

SO ORDERED.

Dated:    May 30, 2025
          Rochester, New York

ENTER:

HON. MEREDITH A. VACCA
United States District Judge

18